# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LUCINDA K. SULLIVENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-CV-362-PJC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Claimant, Lucinda K. Sullivent ("Sullivent"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Sullivent appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Sullivent was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

Sullivent was 58 years old at the time of the hearing before the ALJ on September 1, 2011. (R. 35). She had an eleventh-grade education. (R. 36). She had been working approximately 16 hours a week as a receptionist since 2007. *Id.* Sullivent testified that she only worked 16 hours a week because she became overwhelmed if she worked more hours. *Id.*

Sullivent testified that she was not able to work more than her scheduled two days a week due to her inability to handle the increased stress from more shifts. (R. 39). She worked a shift from 3:30 to 11:30 p.m. because she could not perform the additional duties that were required for the other two shifts. (R. 39-40).

Sullivent testified that she had experienced a stroke in 1995, and since that time she had several jobs. (R. 40). Of these jobs, she believed that she had stayed longest at her current job. (R. 40-41). She believed she had been successful at her current job because it was easy. *Id.* She had no problems doing her current job. (R. 43). Stress was the reason why she could not work every day. (R. 47). When asked if there were days at her current job when she "just couldn't go," Sullivent replied "No, I don't think." *Id.* She said that it helped that she sometimes visited her daughter in Denver, which gave her a break from work. (R. 47-48). When asked if she could work without those breaks, she said she would be "somewhat stressed." (R. 48). When she was stressed, she wanted to cry, and she felt overwhelmed. *Id.*

Sullivent said that she understood from doctors that there was no treatment available that would help her with stress. (R. 44). She said that she sometimes had trouble following written instructions, and she gave an example of her daughter showing her where to drive instead of just giving her a map and written directions. (R. 44-45). Sullivent said that she had difficulty with reading comprehension. (R. 45-46). She said that she did not have this difficulty before the stroke. (R. 46).

Sullivent said that she had pain in her back and neck. (R. 41). She had pain in her neck for some portion of every day. (R. 42). Sometimes ibuprofen helped. *Id.* Sullivent testified that sometimes her back would go out on her. *Id.* When that happened, she had difficulty moving, and she would need to lie down. *Id.* She thought this happened about three or four times a year.

(R. 42-43). As examples of activities that were difficult for her, Sullivent said that she could not clean the bathtub and sometimes she had difficulty changing the sheets on her bed. (R. 43). She thought that she could lift 20 to 25 pounds most of the time. *Id.* She sometimes had problems with her left arm, but her pain was mostly in her neck. (R. 48). Sometimes the pain would go from her neck into her arm and hand. (R. 49). She also had arthritis in her hand. *Id.*

On October 24, 1995, Sullivent was seen by John W. Hickman, Ph.D. for a neuropsychological evaluation in connection with an application for disability. (R. 286-91). Dr. Hickman stated that a CT scan of Sullivent's brain "demonstrated some change in brain anatomy secondary to ischemic events." (R. 286). Dr. Hickman said that it appeared that Sullivent had been functioning "in the upper part of the borderline range of mental ability." *Id.* He said that Sullivent had significant impairment to her ability to consolidate new verbal memories from either single words or paragraphs. *Id.* She had a severe impairment to mental adaptability and had problems handling new situations and was likely to have poor judgment and to fail to learn from her mistakes in those situations. *Id.* Significant difficulties attending to verbal or visual details would lead to her making errors. *Id.* Dr. Hickman said that Sullivent was capable of doing "simple, repetitive tasks that stress only basic motor speed, strength, and dexterity and do not require attention to detail, complex sensory discrimination, or problem solving." (R. 287).

A form dated March 24, 1997 that appears to be for disability insurance purposes states that Sullivent was considered to have attained maximum medical improvement from her stroke, and her limitations were considered to be permanent. (R. 293).

Sullivent saw Erick Hill, M.D., on June 8, 2007 for right shoulder pain that had been ongoing for five months. (R. 210-11). On examination, Sullivent's range of motion of her right shoulder was limited in all directions due to pain. (R. 210). She was given samples of Celebrex.

3

(R. 211). X-rays completed that day showed moderate degenerative changes of the right acromioclavicular joint. (R. 212). Dr. Hill characterized the results of the x-rays as mild to moderate arthritic changes that were appropriate for age. (R. 209).

At Harvard Family Physicians on July 1, 2008, one of Sullivent's complaints was pain in her left middle finger, and she was diagnosed with osteoarthritis of the left hand. (R. 197). At a follow-up appointment on July 29, 2008, Sullivent had tenderness of her proximal interphalangeal joints (the "PIP" joints) of her hands, and she was diagnosed with osteoarthritis of those joints. (R. 196).

Sullivent saw Dr. Hill on February 2, 2009, and the assessment was polyarthralgias of both hands "without significant findings." (R. 206-07). He prescribed Celebrex. (R. 207).

On May 13, 2010, Sullivent saw James Phoenix, M.D., and described left arm pain and tingling starting at her shoulder and radiating down her arm. (R. 255-56). Dr. Phoenix assessed arm parasthesia that was most likely nerve impingement, and he recommended the use of non-steroidal anti-inflammatory medications ("NSAIDs") for one week. *Id.* X-rays of her cervical spine completed that day showed moderate disk space narrowing between C2 and C4, with a "fairly marked" disc space narrowing between C4 and C7. (R. 275). There were bony spurs, including some that were characterized as "prominent." *Id.* There were also degenerative changes involving the facet joint regions, and a 2.5 mm posterior subluxation of C4 over C5. *Id.*

Agency consultant Beau C. Jennings, D.O., completed a physical examination of Sullivent on April 2, 2010. (R. 214-27). X-rays of Sullivent's right hand completed as part of Dr. Jennings' examination showed no identifiable abnormality. (R. 216). Attached range of joint motion evaluation chart, hand / wrist sheet, and backsheet all reflected that findings were within normal limits. (R. 217-20).

Nonexamining agency consultant Janet G. Rodgers, M.D., completed a Physical Residual Functional Capacity Assessment on September 15, 2010. (R. 277-84). For exertional limitations, Dr. Rodgers indicated that Sullivent could perform work at the "medium" exertional level. (R. 278). For narrative explanation, Dr. Rodgers reviewed Sullivent's history of stroke, but noted that the results of Dr. Jennings' consultative examination were normal. *Id.* She discussed the x-rays of Sullivent's cervical spine and lumbar spine that showed degenerative changes, but she said that Sullivent was asymptomatic for the most part. *Id.* Dr. Rodgers said that Sullivent should avoid heavy strenuous work activities. *Id.* Dr. Rodgers found that no manipulative, postural, visual, communicative, or environmental limitations were established. (R. 279-84).

Agency consultant Michael D. Morgan, Psy. D., completed a mental status examination of Sullivent on April 6, 2010. (R. 228-32). Sullivent's score on one test indicated no serious impairment in orientation, concentration, or memory, and Dr. Morgan's observations corroborated that indication. (R. 230). He said that Sullivent did not exhibit symptoms that would meet the criteria for a specific anxiety disorder. *Id.* Sullivent's thought process was normal and lacked signs of organic impairment or psychosis. *Id.* Dr. Morgan gave no diagnosis on Axis I[1] or Axis II and scored Sullivent's Global Assessment of Functioning ("GAF")[2] as 86-

---

[1] The multiaxial system "facilitates comprehensive and systematic evaluation." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereinafter "DSM IV").

[2] The GAF score represents Axis V of a Multiaxial Assessment system. *See* DSM IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id.* at 32. *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

90. (R. 231). He said that Sullivent "did not present with signs and symptoms consistent with a mental health disorder." *Id.*

Agency nonexamining consultant Deborah Hartley, Ph.D., completed a Psychiatric Review Technique form on April 14, 2010. (R. 233-46). She found that there was no medically determinable impairment. (R. 233). In the "Consultant's Notes" portion of the form, Dr. Hartley reviewed Sullivent's claims of memory loss and cognitive problems resulting from a stroke. (R. 245). Dr. Hartley briefly summarized Dr. Morgan's consultative examination report and Sullivent's reported activities of daily living. *Id.*

## Procedural History

Sullivent filed her application for disability insurance benefits on December 21, 2009. (R. 116-17). Sullivent asserted onset of disability on December 31, 2008. (R. 116). The application was denied initially and on reconsideration. (R. 63-67, 70-72). An administrative hearing was held before ALJ Richard J. Kallsnick on September 1, 2011. (R. 32-58). By decision dated October 7, 2011, the ALJ found that Sullivent was not disabled. (R. 19-28). On April 17, 2013, the Appeals Council denied review. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

7

## Decision of the Administrative Law Judge

The ALJ found that Sullivent met insured status requirements through December 31, 2013. (R. 21). At Step One, the ALJ found that Sullivent had not engaged in any substantial gainful activity since her alleged onset date of December 31, 2008. *Id.* At Step Two, the ALJ found that Sullivent had a severe impairment of degenerative disc disease. *Id.* The ALJ discussed Sullivent's 1995 stroke and found that she had no mental impairments. (R. 21-22). At Step Three, the ALJ found that Sullivent's impairments did not meet any Listing. (R. 22).

The ALJ found that Sullivent had the RFC to perform the full range of medium work. *Id.* At Step Four, the ALJ found that Sullivent was capable of performing past relevant work. (R. 27). Therefore, the ALJ found that Sullivent was not disabled at any time from December 31, 2008, through the date of his decision. *Id.*

## Review

Sullivent argues that the ALJ erred in failing to find that Sullivent had a severe mental impairment and that he erred in failing to find that she satisfied the requirements of Listing 12.02 for organic mental disorders. Plaintiff's Opening Brief, Dkt. #16. Regarding the issues raised by Sullivent, the Court finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Thus, the ALJ's decision is **AFFIRMED**.

The core of Sullivent's arguments is inherently faulty because she mistakes the question that is before this Court. She asserts that there was evidence to support findings that she had a severe mental impairment and that she met Listing 12.02. The task before this Court is not to review whether there was evidence to support Sullivent's claims. Instead, the question the Court must decide is whether the decision of the ALJ, finding that Sullivent had no severe mental impairment and that she did not meet Listing 12.02, is supported by substantial evidence.

The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (further quotation omitted). Here, even if the evidence was susceptible to a conclusion in favor of finding Sullivent to be disabled, that possibility would not mean that the ALJ's conclusion of nondisability is lacking support by substantial evidence. The Court finds that there was substantial evidence supporting the ALJ's decision.

The Court first notes that the ALJ's Step Two[4] finding that Sullivent did not have a severe mental impairment is supported by substantial evidence. The ALJ explicitly relied upon the findings of consulting examiner Dr. Morgan, and he also said that he gave significant weight to the opinion of nonexamining consultant Dr. Hartley. (R. 22, 26). The opinions of these two medical professionals, that Sullivent had no severe mental impairments, was substantial evidence upon which the ALJ was entitled to rely. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (nonexamining consultant's opinion was an acceptable medical source which the ALJ was entitled to consider and which supported his RFC determination).

---

[4] An error at Step Two is harmless so long as the ALJ finds at least one condition to be severe, so that the five-step sequential evaluation continues. *Oldham v. Astrue*, 509 F.3d 1254, 1256-57 (10th Cir. 2007) (no error in ALJ's failure to include claimant's reflex sympathetic dystrophy as severe impairment at Step Two); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (any error at Step Two was harmless when ALJ properly proceeded to next step of evaluation sequence). Therefore, because the ALJ found one severe impairment at Step Two, there was no reversible error at this step. While Sullivent states her first argument as being one at Step Two, the undersigned understands Sullivent's arguments here to be that the ALJ should have found that her severe mental impairments satisfied Listing 12.02 or resulted in mental limitations that should have been included in the RFC determination.

In light of the ALJ's explicit reliance on the opinion evidence of Dr. Morgan and Dr. Hartley, the Court rejects Sullivent's first argument that the ALJ interjected his own medical opinion in making his finding at Step Two. Plaintiff's Opening Brief, Dkt. #16, p. 3. A second group of arguments put forward by Sullivent focuses on why Dr. Hickman's report was better than Dr. Morgan's: it was more thorough; it was consistent with Sullivent's testimony; and it was consistent with the third party function statement of Sullivent's sister. *Id.*, pp. 3-5. This is a request for this Court to reweigh the opinion evidence and to give Dr. Hickman's 1995 report more weight than Dr. Morgan's 2010 report. This Court's limited scope of review precludes reweighing the opinion evidence. *Flaherty*, 515 F.3d at 1071.

In an argument related to her request for Dr. Hickman's 1995 report to be given more weight, Sullivent asserts that the ALJ's reasons for giving Dr. Hickman's opinion "little or no weight" were not sufficient. Plaintiff's Opening Brief, Dkt. #16, pp. 5-6. Sullivent overlooks the ALJ's first reason: that Dr. Hickman's opinion was "based upon [Sullivent's] level of functioning at a time, approximately 16 years in the past." (R. 22). In closing this section of his discussion, the ALJ stated that he afforded "greater weight to Dr. Morgan's more recent opinion." *Id.* These statements make it clear that the ALJ's main reason for the weight he attributed to Dr. Hickman's 1995 report was its remoteness in time. It is certainly legitimate to give an opinion that is remote in time less weight than an opinion that is closer in time to the relevant period. *See, e.g., Welch v. Colvin*, 2014 WL 1853905 *3 (10th Cir.) (unpublished) ("lack of more chronologically relevant evidence" of post-traumatic stress disorder undermined opinions in report created two years after the relevant time period); *Andersen v. Colvin*, 541 Fed. Appx. 842, 846-47 (10th Cir. 2013) (unpublished) (affirming ALJ's attribution of more weight to 2000 report of nonexamining consultant when relevant period ended in 1998 than to later opinions of treating physicians).

The ALJ's legitimate reason that Dr. Hickman's report was remote in time is not undermined by the remainder of the ALJ's discussion in this paragraph, which is the focus of Sullivent's arguments that the ALJ did not provide legitimate reasons for giving that report little or no weight. (R. 22). In his next statement, the ALJ said, in effect, that Sullivent had probably improved in the 16 years since Dr. Hickman's opinion, and Sullivent says that this is improper speculation. Even if this statement is improper speculation, a question not reached by the undersigned, it does not detract from the fact that Dr. Morgan's evaluation of Sullivent's level of mental functioning was more chronologically relevant than Dr. Hickman's evaluation. Thus, the ALJ's principal reason for the weight attributed to Dr. Hickman's 1995 report remains valid.

Sullivent criticizes the ALJ's next statement that Dr. Hickman's evaluation appeared to be given in a context other than the Social Security disability context, and therefore it was "quite likely" that he had used a different standard in reaching his conclusions. The Tenth Circuit has recognized that other disability proceedings are not binding on Commissioner due to their differing standards. *See, e.g., Seever v. Barnhart*, 188 Fed. Appx. 747, 753 (10th Cir. 2006) (unpublished); *Jones v. Barnhart*, 53 Fed. Appx. 45, 47 (10th Cir. 2002) (unpublished). Thus, the Court finds that it was legitimate for the ALJ here to find that he was not bound by a disability opinion given in a proceeding outside the context of Social Security. In any event, this statement by the ALJ does not affect his primary reason, temporal remoteness, for giving Dr. Hickman's opinions little or no weight.

Finally, Sullivent gives reasons why she asserts that the ALJ should not have relied upon a statement Dr. Hickman made in his report that Sullivent had "difficulty being consistent in her answers" on the MMPI-2 personality test, causing her personality profile to be "technically invalid." The Court is sympathetic to Sullivent's arguments on this point, but they again request

11

that this Court reweigh the evidence, now on the question of the ALJ's interpretation of the significance of this statement by Dr. Hickman. The ALJ's interpretation is not obviously incorrect, however, and this Court therefore will not reweigh the evidence to impose its own interpretation. And, as has been true of all of Sullivent's arguments regarding Dr. Hickman's 1995 report, this point does not detract from the ALJ's main reason for giving the report little or not weight: its remoteness in time.

The ALJ had legitimate and specific reasons for giving little or no weight to the opinions of examining physician Dr. Hickman and for giving examining consultant Dr. Morgan's report greater weight. Thus, the ALJ did not err on this question, and his Step Two decision that Sullivent had no severe mental impairments was supported by substantial evidence in the form of Dr. Morgan's report and the opinion of nonexamining agency consultant Dr. Hartley.

Sullivent's remaining argument is that she met Listing 12.02 for organic mental disorder, and she cites to Dr. Hickman's report, Sullivent's testimony, and the third party function statement of Sullivent's sister. As discussed above, the question is not whether these three sources supported a finding regarding Listing 12.02, but whether the ALJ's decision, that Sullivent did not meet Listing 12.02, is supported by substantial evidence. As was true of the general question of whether Sullivent had a severe mental limitation, the ALJ's decision on the Listing question[5] was supported by the opinion evidence of both Dr. Morgan and Dr. Hartley. For

---

[5] Sullivent did not argue that the ALJ's error was in his failure to consider specifically Listing 12.02, which was not mentioned by the ALJ in the Step Three section of his decision. (R. 22). This case comes within the harmless error doctrine explained by the Tenth Circuit in *Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005). In *Fischer-Ross*, the ALJ had failed to include any facts or analysis in Step Three. The Tenth Circuit found that the ALJ's specific findings at Steps Four and five contradicted a conclusion that the claimant's problems could meet the severity required to be conclusively presumed disabled under any of the pertinent listings. *Id.* at 734-35. Here, the ALJ's supported finding that Sullivent had no severe mental limitations precludes a finding at Step Three that she met Listing 12.02.

the same reasons discussed above, the ALJ gave specific and legitimate reasons for giving the opinion of Dr. Morgan more weight than the opinion of Dr. Hickman. Thus, the ALJ committed no error regarding Step Three, and his decision was supported by substantial evidence.

Sullivent's arguments are essentially a request that this Court reweigh the evidence, emphasizing the evidence that supports her disability claim, while discounting the evidence that does not support it. The Court must decline this invitation. *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013). While Sullivent's case might be susceptible to conclusions that differ from those made by the ALJ, it is not the Court's role to make findings in the first instance. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Allen v. Barnhart,* 357 F.3d 1140, 1143-45 (10th Cir. 2004) (court acts within confines of its administrative review authority).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and complies with legal requirements. The decision is **AFFIRMED**.

Dated this 28th day of July 2014.

_____
Paul J. Cleary
United States Magistrate Judge